IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| ROBERT MARQUIS RAMEY, | : | |
| | : | |
| Plaintiff, | : | CIVIL ACTION NO. 15-1431 |
| | : | |
| v. | : | |
| | : | |
| RONALD PHILLIPS (Medical Director), | : | |
| J. DUFFY (Delaware County Sheriff), | : | |
| J. MOODY (Correctional Sergeant), and | : | |
| ISSAC OKAI (Correctional Officer), | : | |
| | : | |
| Defendants. | : | |

**MEMORANDUM OPINION**

Smith, J.                                                                    October 11, 2016

A prison official's deliberate indifference to a prisoner's serious illness or injury constitutes cruel and unusual punishment in violation of the Eighth Amendment. In this case, the *pro se* prisoner plaintiff brought an action for an Eighth Amendment violation under 42 U.S.C. § 1983 based on injuries he sustained after a garage gate at a county prison fell onto a sheriff's van in which he was a passenger. The plaintiff claims that the defendants were deliberately indifferent to his injuries, as evidenced by the medical treatment, or lack thereof, he received. The plaintiff also claims that one defendant was negligent in operating the gate at issue. Three defendants filed motions for summary judgment, asserting that, *inter alia,* the plaintiff has not established that the defendants acted deliberately indifferent towards his medical needs. The court has reviewed the parties' submissions and will grant those motions. The plaintiff has failed to demonstrate, even drawing all reasonable inferences in his favor, that the defendants denied him any requested medical care, or that his injuries were serious enough to fall within the purview of the Eighth Amendment. The plaintiff's remaining negligence claim arises under state

law, and the court declines to exercise supplemental jurisdiction over that claim.  Thus, the court

will also dismiss that claim without prejudice.

## I.      FACTUAL RECORD AND PROCEDURAL HISTORY

The transportation of the *pro se* plaintiff, Robert Marquis Ramey ("Ramey"), to a

suppression hearing on February 25, 2014 was not without incident.[1]  *See* Defendants' Statement

of Undisputed Material Facts in Supp. of Mot. for Summ. J. ("Phillips and Moody Undisputed

Facts") at ¶¶ 2, 3, Doc. No. 40; Defendants' Motion for Summary Judgment ("Phillips and

Moody MSJ") at ¶ 2 & Ex. A, Park Police Incident Report ("Police Incident Report"), Doc. No.

41; Statement of Material Facts in Supp. of Mot. for Summ. J. of J. Duffy ("Duffy Undisputed

Facts") at ¶¶ 4, 5, 9, Doc. No. 42-1; Plaintiff's Resp. to Defs.' Mot. for Summ. J. ("Pl.'s Resp.")

at ¶ 1, Doc. No. 51.  While in the process of leaving the George W. Hill Correctional Facility

(the "Hill Facility"), the sheriff's van incurred some damage when a raised garage gate

prematurely dropped, landing on the van.  *See* Amended Complaint ("Am. Compl.") at 2, Doc.

No. 11; Phillips and Moody Undisputed Facts at ¶ 3; Police Incident Report at 3; Duffy

Undisputed Facts at ¶ 1; Pl.'s Resp. at ¶ 2.  Ramey was one of eleven prisoners in the van, all of

whom were unloaded and taken to the Hill Facility medical center.  *See* Police Incident Report at

3.  Apparently, each prisoner received a medical evaluation and "no further injuries were

reported after each was evaluated."  *Id.*

With regard to Ramey's evaluation, the defense has produced documentation showing

that he received a medical evaluation on the date of the incident.  Phillips and Moody MSJ, Ex.

---

[1] In the original complaint and the amended complaint, Ramey inadvertently stated that the incident occurred on February 19, 2014.  *See* Complaint at 2, Doc. No. 4; Amended Compl. at 2, Doc. No. 11.  Ramey later clarified that the date of the incident was in fact February 25, 2014, and the court entered an order on July 19, 2016, to reflect this change.  *See* Plaintiff's Resp. to Defs.' Mot. for Summ. J. at 1, ¶ 1, Doc. No. 51; Order at ¶ 1, Doc. No. 53.

B at ECF pp. 7-10, Doc. No. 41-2.[2]   During Ramey's evaluation, he told the attending care provider "I don't know if I'm injured or not," denied that he was in any pain, and ended the evaluation by telling the provider that he was "fine."   *Id.* at ECF pp. 7-9.   In her reports, the provider stated that medical treatment was not provided because Ramey could not describe any injury and so "no injury [was] assessed."   *Id.* at ECF p. 8.   The provider also noted that Ramey was "ambulating independently with steady gait," "was uncooperative with questioning," "was in no visual distress," and had "[f]ull ROM of upper/lower extremities."   *Id.* at ECF p. 7; *see also id.* at ECF p. 9 (discussing assessment further).

The next day, Ramey submitted a "sick call" request, asking to be seen again at the medical center.[3]   *See id.* at ECF p. 12.   Ramey indicated:   "I was in a car incident yesterday.   I woke up this morning my back was stiff [&] throbbing.   I can barely bend over.   My lower back is in pain."   *Id.*   On February 28, 2014, Ramey returned to the medical center, complaining of back and neck pain.   *See id.* at ECF p. 5.   In her evaluation, the attending care provider referenced Ramey's subjective complaints and noted the following:   (1) he complained of pain in his bilateral upper back and mid-back; (2) the pain was radiating into his neck; (3) the pain was piercing, pounding, and throbbing; (4) the pain was constant; and (5) the pain intensity was 8 out of 10.[4]   *See id.*   The attending care provider further noted the following in her "objective" evaluation:

> Able to bend side to side: Yes
> Able to arch back posteriorly: Yes
> Able to touch toes: Yes
> Gait: narrowed stance [with] limp

---

[2] Exhibit B consists of several documents designated with nonconsecutive Bates numbers.   Accordingly, and where appropriate, the court will refer to the page number by its Electronic Case Filing ("ECF") page number.
[3] Ramey attaches a copy of this request to his response to the motions for summary judgment.   *See* Pl.'s Resp. at ECF p. 12.
[4] Ramey attaches a copy of the evaluation to his response to the motions for summary judgment.   *See* Pl.'s Resp. at ECF pp. 14-15.

Method of arrival to medical: Walking
Skin: Warm/dry[]
Abrasions: None noted
Bruising: None noted
Swelling: None noted
Presence of muscle spasms or tightness on palpation: No
Overall appearance: Mild distress

ASSESSMENT:
Backache

*Id.* at ECF pp. 5-6.  The attending provider prescribed 200 milligrams of Ibuprofen, 2 tablets by mouth twice a day for three days, and provided a special needs pass to allow Ramey to receive analgesic balm to apply to the affected area.  *Id.* at ECF p. 6.

Ramey did not submit another sick call request until April 20, 2014, when he claimed that his problem was:  "4 da [sic] past 6 mos. I've been having back-[&]-knee problems."  *Id.* at ECF p. 3.  Ramey received and attended a medical appointment on April 24, 2014.  *Id.* at ECF pp. 3, 4, 13.  At that appointment, Ramey complained of back/neck pain and that his exercise regimen was not alleviating that pain.[5]  *Id.* at ECF pp. 3, 4.  The attending care provider treating Ramey noted the following about his evaluation:

Gait: Steady and strong; WNL
Able to get on/off table: Yes
Bruising: No
Swelling: No
Range of Motion: Full range of motion.
Palpation (Spasms/Tightness): No
Skin (Distal to Injury): Warm, pink, and dry.
Overall Appearance: Mild distress.

ASSESSMENT:
Alteration in Comfort [related] to Low Back Pain

---

[5] It is not clear from the record when Ramey was encouraged to begin an exercise regimen consisting of stretches as a treatment for his back pain, and who initially encouraged him.  But it does appear at some point the prison provided Ramey a pamphlet, which detailed certain therapeutic exercises.  *See* Phillips & Moody MSJ., Ex. B at ECF p. 10.  It also appears that, during the April 24 medical evaluation, the attending care provider affirmatively encouraged Ramey to continue with his regimen.  *See id.* at 4.

*Id.* at ECF pp. 3, 4.  The care provider again prescribed Ramey 200 milligrams of Ibuprofen (one tablet by mouth two times a day for three days as needed), the analgesic balm (to be applied to the affected area), and recommended that he continue with his exercise regime "to help with his discomfort, not to spite it."  *Id.* at ECF p. 4.

Ramey did not file another medical request at the Hill Facility until September 2, 2014.  In this request, he stated:  "Before I go upstate, I wanna [sic] know what's wrong with my back."  *Id.* at ECF p. 14.  It appears that a care provider saw Ramey on September 5, 2014, and although Ramey mentioned his back in the medical request, the care provider's notes from Ramey's visit did not mention his back.  Instead, they stated the following:

> [Patient] is complaining that he had an injury one year ago that appears to have been a sprained ankle and he thinks this will prevent him from staying when he gets sent upstate.  He wants a permanent injury as an excuse he admitted.  [T]here is nothing wrong but walks like an arthritic 80 y/o man.  Attempted to point out that the limping gait will damage the muscles more.  States that he will do more stretching and use OTC prn.

*Id.* at ECF p. 2.

On March 6, 2015, Ramey initiated this action by filing an application to proceed *in forma pauperis* and a proposed complaint in which he asserted claims against the defendants, the Hill Facility, Community Education Center ("CEC"), a Delaware County Sheriff, "J. Duffy" ("Duffy"), and five employees of the Hill Facility:  Superintendent John A. Reilly, Jr. ("Reilly"), Assistant Superintendent Donna Mellow ("Mellon"),[6] the medical director, Dr. Ronald Phillips ("Dr. Phillips"), a health service administrator, "N. Smith" ("Smith"), and a grievance coordinator, "E. Asante" ("Asante").[7]  Doc. No. 1.  In the complaint, it appeared that Ramey was

---

[6] As discussed in the court's February 22, 2016 order, Ramey incorrectly identified this individual as Donna Mellow, but her name is Donna Mellon.  Order at 2-3, n.4, Doc. No. 27.

[7] The federal "prisoner mailbox rule" provides that a *pro se* prisoner's petition is deemed filed "at the time petitioner delivered it to the prison authorities for forwarding to the court clerk." *Houston v. Lack*, 487 U.S. 266, 275-76 (1988).  Although the doctrine arose in the context of habeas corpus petitions, the United States Court of Appeals for

asserting claims for constitutional violations under 42 U.S.C. § 1983 for the defendants' actions in causing the gate to fall on the van and failing to provide him with adequate medical care following the accident. *See* Complaint, Doc. No. 1-1.

On April 21, 2015, the court entered a memorandum opinion and order after evaluating the application to proceed *in forma pauperis* and screening the complaint under 28 U.S.C. § 1915(e)(2) and 28 U.S.C. § 1915A.  Doc. Nos. 2, 3.  In those documents, the court, *inter alia*: (1) granted the application to proceed *in forma pauperis*, (2) dismissed the claims against the Hill Facility with prejudice because it is not a "person" subject to suit under 42 U.S.C. § 1983, (3) dismissed without prejudice the claims against CEC because it was not subject to *respondeat superior* liability and Ramey had not included allegations of a policy or custom that would subject CEC to liability under *Monell v. New York City Department of Human Services*, 436 U.S. 658 (1978), (4) dismissed without prejudice the claims against Reilly, Mellon, Dr. Phillips, Smith, Asante, and Duffy because Ramey did not include any allegations showing that these defendants were personally involved in the actions underlying his claims, and (5) dismissed with prejudice the claims for injunctive relief (in the nature of future medical treatment and physical therapy) against these defendants because Ramey was no longer incarcerated at the Hill Facility. *See* Memorandum Op. at 3-12, Doc. No. 2; Order at 2-3, Doc. No. 3.  The court also granted Ramey leave to file an amended complaint within 30 days of the court's order.  *See* Memorandum Op. at 12; Order at 2-3.

After Ramey requested and the court granted an extension of time for him to file an amended complaint, he filed a motion for leave to file an amended complaint on June 18, 2015.

---

the Third Circuit has extended it to civil actions brought under 42 U.S.C. § 1983.  *See Pearson v. Secretary Dep't of Corr.*, 775 F.3d 598, 600 n.2 (3d Cir. 2015) (applying rule in section 1983 action and determining that *pro se* prisoner plaintiff filed complaint on date he signed it).

Doc. Nos. 5, 6, 9. [8]   The court granted the motion on July 21, 2015, and ordered the clerk of court to docket the two pleadings attached to the motion as the amended complaint.  Doc. No. 10.

In the amended complaint, Ramey once again named as defendants Mellon, Smith, Duffy, Dr. Phillips, and Asante, and he also added a "'J.' Moody" ("Moody"), a correctional sergeant at the Hill Facility, and two fictitious defendants.[9]  *See* Amended Compl. at 1, Doc. No. 11.  The factual allegations referenced in the amended complaint are as follows:

> On February 19th, 2014, while being transported to court for a suppression hearing, the garage gate in [the Hill Facility] was dropped onto sheriff van (vehicle # 53-3) which caused immediate pain to plaintiff's neck and upper back area.  After complaining to Sheriff Duffy and Sergeant Moody about the pain, they tell me to "see medical when you come back[."]

> After filing "sick call" request, plaintiff was seen on or around February 22nd, 2014 by medical nurse "Jane Doe".

> After seeing nurse "Doe" about injuries, plaintiff received a tube of muscle rub, and a three (3) day prescription of iburprofen.

> Plaintiff then filed another "sick call" explaining that the "upper back was too painful to rub, let alone apply muscle rub on it myself."

> "Sick call" request went unanswered.

> Plaintiff then filed a grievance form explaining about medical being unresponsive to the "sick call" request.

> Grievance form went unanswered.

*Id.* at 2-3.

---

[8] The clerk of court docketed this submission on June 24, 2015.  The court notes that Ramey also moved to have the court merge this case with his other civil action docketed at No. 2:15-cv-1461.  Doc. No. 7.  As Ramey had not yet filed an amended complaint, the court denied without prejudice the request and allowed him to renew the request after filing an amended complaint.  Order, Doc. No. 8.  Ramey never refiled the request to consolidate.

[9] Ramey alleged that (1) Moody "is a correctional seargent [sic] at [the Hill Facility] who was stationed in receiving room on [the day of the incident]," (2) Jane Doe "is a medical nurse at [the Hill Facility] who the plaintiff seen [sic] for treatment," and (3) John Doe "is a correctional security officer at [the Hill Facility] who was in control of gate security."  Amended Compl. at ¶¶ 5, 6, 8.

Based on these allegations, Ramey asserts that (1) Moody and Duffy violated his Eighth and Fourteenth Amendment rights when they failed to take action to address his physical injuries, (2) the fictitious defendants, Smith, and Dr. Phillips violated his Eighth and Fourteenth Amendment rights due to "[t]he physical injuries and acceptance of [him]," (3) Asante violated his Fourteenth Amendment rights when he failed to "acknowledge [Ramey's] grievance about complaints to medical," and (4) Mellon violated his Eighth and Fourteenth Amendment rights because of her "policy in allowance of [the] incident to proceed without medical attention for [him]." *Id.* at 3-4. Ramey sought declaratory relief, compensatory damages, and punitive damages against the defendants. *Id.* at 4.

Dr. Phillips, Asante, Mellon, and Moody jointly filed a motion to dismiss the amended complaint on September 16, 2015. Doc. No. 17. Ramey sought and received an extension to file a response to the motion to dismiss, and he filed a response on November 1, 2015. Doc. Nos. 19-21.

The court held an initial pretrial conference with the parties by telephone on February 17, 2016. During the conference, the court discussed the aforementioned motion to dismiss and some of the court's concerns with the legal viability of the causes of action in the amended complaint. Two days later, Duffy had counsel enter an appearance on his behalf and he also filed a motion to dismiss the amended complaint. Doc. No. 26.

Based upon the court's discussion with the parties during the initial pretrial conference and review of the motion to dismiss filed by Dr. Phillips, Asante, Mellon, and Moody, the court entered an order on February 22, 2016, in which the court, *inter alia*:  (1) dismissed with prejudice any claims against Smith under the court's screening authority pursuant to 28 U.S.C. § 1915(e)(2) insofar as (a) Ramey failed to assert any allegations of Smith's personal involvement

8

in the purported wrongs referenced in the amended complaint, and (b) to the extent that Ramey referenced during the conference that he was attempting to claim that Smith failed to properly respond to Ramey's grievances, such a claim was not legally cognizable; (2) granted the motion to dismiss as to any claims against Mellon and dismissed those claims with prejudice because (a) Ramey had not included any allegations of her personal involvement in his claims, and (b) Ramey agreed he could not assert any cognizable claim against her; (3) granted the motion to dismiss as to any claims against Asante and dismissed those claims with prejudice for the same reasons the court was dismissing the claims against Smith and because Ramey agreed to the dismissal; and (4) denied the motion to dismiss in all other respects.  After the entry of this order, the only remaining defendants were Dr. Phillips, Moody, Duffy, and the fictitious defendants.

Dr. Phillips and Moody filed an answer with affirmative defenses to the amended complaint on March 3, 2016.  Doc. No. 28.  As Duffy's motion to dismiss remained outstanding, Ramey requested and received an extension to file a response to this motion and eventually filed a brief in opposition on April 11, 2016.  Doc. No. 32.  The court denied Duffy's motion to dismiss on April 29, 2016, and Duffy filed an answer with affirmative defenses to the amended complaint on May 5, 2016.  Doc. Nos. 33, 34.

After the close of discovery, Dr. Phillips and Moody filed a motion for summary judgment, supporting brief, and statement of undisputed material facts on June 13, 2016.  Doc. Nos. 40, 41.  The following day, Duffy separately filed a motion for summary judgment with a statement of undisputed material facts and supporting memorandum of law.  Doc. No. 42. Ramey filed his response to the motions for summary judgment on July 8, 2016.  Doc. No. 51.

After the then-remaining defendants moved for summary judgment, Ramey filed a motion for leave to file an amended complaint that the clerk of court docketed on June 16,

2016.[10]  Doc. No. 44.  In the motion, Ramey sought to amend the complaint to add the names of two of his fictitious defendants and to remove Reilly, Mellon, Smith, and Asante from the amended complaint.  *See* Motion for Leave to File an Am. Compl. at 1.  Duffy filed a response to this motion on June 20, 2016.  Doc. No. 45.  After telephone conferences with the court on June 28, 2016, and July 14, 2016, and with the consent of all parties, the court (1) granted the part of the motion to amend so that the fictitious defendant, John Doe, Correctional Officer would be deemed to refer to Issac Okai ("Okai"), Correctional Officer, (2) dismissed the claims against the fictitious defendant, Jane Doe, Medical Nurse, (3) permitted Ramey to submit documents with a caption eliminating dismissed defendants, and (4) denied the motion to amend in all other respects.  Order at 1-2, Doc. No. 53.

## II.    DISCUSSION

### A.    <u>Standard of Review</u>

A district court "shall grant summary judgment if the movant shows that there is no genuine issue as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).  Additionally, "[s]ummary judgment is appropriate when 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.'" *Wright v. Corning*, 679 F.3d 101, 103 (3d Cir. 2012) (quoting *Orsatti v. New Jersey State Police*, 71 F.3d 480, 482 (3d Cir. 1995)).  An issue of fact is "genuine" if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party."  *Anderson v. Liberty Lobby, Inc.* 477 U.S. 242, 248 (1986).  A fact is "material" if it "might affect the outcome of the suit under the governing law."  *Id.*

---

[10] In the certificate of service, Ramey did not identify when he placed the motion in the custody of prison officials for mailing to the clerk of court.  *See* Doc. No. 44 at ECF p. 2.

The party moving for summary judgment has the initial burden "of informing the district court of the basis for its motion, and identifying those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986) (internal quotation marks omitted). Once the moving party has met this burden, the non-moving party must counter with "'specific facts showing that there is a genuine issue for trial.'" *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (citation omitted); *see* Fed. R. Civ. P. 56(c) (stating that "[a] party asserting that a fact . . . is genuinely disputed must support the assertion by . . . citing to particular parts of materials in the record . . .; or . . . [by] showing that the materials cited do not establish the absence . . . of a genuine dispute"). The non-movant must show more than the "mere existence of a scintilla of evidence" for elements on which the non-movant bears the burden of production. *Anderson*, 477 U.S. at 252. Bare assertions, conclusory allegations, or suspicions are insufficient to defeat summary judgment. *See Fireman's Ins. Co. v. DuFresne*, 676 F.2d 965, 969 (3d Cir. 1982) (indicating that a party opposing a motion for summary judgment may not "rely merely upon bare assertions, conclusory allegations or suspicions"); *Ridgewood Bd. of Educ. v. N.E. for M.E.*, 172 F.3d 238, 252 (3d Cir. 1999) (explaining that "speculation and conclusory allegations" do not satisfy non-moving party's duty to "set forth specific facts showing that a genuine issue of material fact exists and that a reasonable factfinder could rule in its favor"). Additionally, the non-moving party "cannot rely on unsupported allegations, but must go beyond pleadings and provide some evidence that would show that there exists a genuine issue for trial." *Jones v. United Parcel Serv.*, 214 F.3d 402, 407 (3d Cir. 2000). Thus, it is not enough to "merely [] restat[e] the allegations" in the complaint; instead, the non-moving party must "point to concrete

11

evidence in the record that supports each and every essential element of his case." *Jones v. Beard*, 145 F. App'x 743, 745-46 (3d Cir. 2005) (citing *Celotex*, 477 U.S. at 322).  Moreover, arguments made in briefs "are not evidence and cannot by themselves create a factual dispute sufficient to defeat a summary judgment motion." *Jersey Cent. Power & Light Co. v. Township of Lacey*, 772 F.2d 1103, 1109-10 (3d Cir. 1985).

"When considering whether there exist genuine issues of material fact, the court is required to examine the evidence of record in the light most favorable to the party opposing summary judgment, and resolve all reasonable inferences in that party's favor." *Wishkin v. Potter*, 476 F.3d 180, 184 (3d Cir. 2007).  The court must decide "not whether . . . the evidence unmistakably favors one side or the other but whether a fair-minded jury could return a verdict for the plaintiff on the evidence presented." *Anderson*, 477 U.S. at 252.  "Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no 'genuine issue for trial'" and the court should grant summary judgment in favor of the moving party.  *Matsushita Elec. Indus. Co.*, 475 U.S. at 587 (citation omitted).  Nonetheless, when one party's claims are "blatantly contradicted by the record, so that no reasonable jury could believe it," the court should not take those claims as true for the "purposes of ruling on a Motion for Summary Judgment." *Scott v. Harris*, 550 U.S. 372, 380 (2007).

## B.   Analysis

### 1.   Deliberate Indifference Claims Against Dr. Phillips, Moody, and Duffy

With respect to Dr. Phillips, Moody, and Duffy, Ramey contends that these defendants denied him proper medical care after the garage gate accident, in violation of the Eighth Amendment.  The undisputed material facts, however, confirm that Ramey has not established any constitutional violations.

To succeed on an Eighth Amendment claim, a plaintiff must show "(i) a serious medical need, and (ii) acts or omissions by prison officials that indicate deliberate indifference to that need." *Natale v. Camden Cty. Corr. Facility*, 318 F.3d 575, 582 (3d Cir. 2003).  A serious medical need "must be such that a failure to treat can be expected to lead to substantial and unnecessary suffering, injury, or death.  Moreover, the condition must be one that has been diagnosed by a physician as requiring treatment or one that is so obvious that a lay person would easily recognize the necessity for a doctor's attention." *Woloszyn v. County of Lawrence*, 396 F.3d 314, 320 (3d Cir. 2005).

Deliberate indifference requires the denial of care where the defendant has knowledge of the need for medical care, but intentionally refuses to provide it, or where the "denial exposes the inmate to undue suffering or the threat of tangible residual injury." *Monmouth Cty. Corr. Institutional Inmates v. Lanzaro*, 834 F.2d 326, 346 (3d Cir. 1987) (quoting cases).  If the inmate is provided treatment, his "mere disagreement [with that treatment] is not an actionable constitutional violation." *Boomer v. Lewis*, 541 F. App'x 186, 191 (3d Cir. 2013) (citing *Lanzaro*, 834 F.2d at 346).

Here, even if Ramey suffers from back pain, there is no indication that the injury he suffered from the gate impact was the sort of life-threatening or permanent injury contemplated by the Eighth Amendment.  *See Lanzaro*, 834 F.2d at 347 (citing cases).  After an initial medical evaluation immediately following the accident, Ramey did not identify any injury to his person. If Ramey could not identify an injury, it is hard to fault the attending care provider for not identifying one either.  Upon his subsequent evaluation, which the prison arranged in response to Ramey's request, Ramey was mobile, showed no bruising or swelling, and was able to move and bend his back without much trouble.  Nothing in the record allows the court to draw any

inference that Ramey's injury was so dire or urgent that the severity of it would be immediately apparent to a lay person, or even, for that matter, to a medical professional such as the care providers.  Accordingly, Ramey's back pain, while no doubt grating to him, is not the type of injury that forms the basis of a constitutional violation.

Moreover, the prison staff was not deliberately indifferent to Ramey's needs. Immediately after the accident, all prisoners in the van received medical evaluations, which indicated that none of them, including Ramey, had any discernable injury.  Ramey twice later requested medical attention, and both times he received it.  While the medical appointments both occurred a few days after Ramey's request, that delay, without more, does not permit the inference that the prison acted with deliberate indifference.  A slight delay between medical request and appointment is not uncommon, particularly when, as stated above, the injury in question does not pose an imminent threat to the requesting patient such that urgent care is required.  And at the evaluations, the attending care provider prescribed treatment for back pain: Ibuprofen, analgesic balm, and continuation of certain exercises designed to alleviate the pain. While Ramey may have disagreed with the prescription and treatment, a patient's mere disagreement with a medical professional's opinion does not rise to a constitutional violation.

Specifically as to Dr. Phillips, Ramey has not presented any facts showing that Dr. Phillips ever refused to treat him, or that Dr. Phillips took any actions after the accident that could amount to deliberate indifference.  As to Moody and Duffy, neither of whom are a part of the prison's medical staff, Ramey contends only that he complained to them about his pain after the accident, and they told him to go to the medical unit the next day.  Ramey has presented no facts suggesting that he notified Moody and Duffy of a serious medical condition.  Even so, Moody and Duffy advised Ramey to seek medical care, and did not assist in a denial of medical

14

treatment in any way.  In fact, each passenger in the van went to the medical unit to be evaluated on the day of the accident, and Ramey was seen again three days later.  Thus, their conduct did not amount to deliberate indifference.  *See Spruill v. Gillis*, 372 F.3d 218, 236 (3d Cir. 2004) ("[A]bsent a reason to believe (or actual knowledge) that prison doctors or their assistants are mistreating (or not treating) a prisoner, a non-medical prison official . . . will not be chargeable with the Eighth Amendment scienter requirement of deliberate indifference.").  Accordingly, the court finds that there are no genuine issues of material fact, and will grant summary judgment in favor of defendants Moody, Duffy, and Phillips.

### 2.        Negligence Claim Against Okai

In his response to the defendants' motion for summary judgment, Ramey contends that Issac Okai, a correctional officer, violated his Eighth Amendment rights by acting negligently prior to the accident.  Okai allegedly submitted an incident report to his shift commander stating that the garage gate had been malfunctioning three days prior to the incident.  Pl.'s Resp. at 4. Ramey has provided no facts supporting this allegation, or any facts allowing him to establish a prima facie case of negligence against Okai.  Even if the court were to accept his allegation of negligence as true, however, mere negligence by prison staff is not sufficient to state an Eighth Amendment violation.  *Farmer v. Brennan*, 511 U.S. 825, 835-39 (1994); *Estelle v. Gamble*, 429 U.S. 97, 105-06 (1976).  Insofar as Ramey intends to allege a common law negligence claim against Okai, the court declines to retain jurisdiction over such a claim.  Under the doctrine of pendent jurisdiction, when the only federal claims in a suit are dismissed before trial, the court should dismiss the state claims unless judicial economy, convenience, and fairness to litigants weigh in favor of retaining jurisdiction over those claims.  *United Mine Workers of Am. v. Gibbs*, 383 U.S. 715, 726 (1966); *Hedges v. Musco*, 204 F.3d 109, 123 (3d Cir. 2000).  Because Ramey

has presented no affirmative justification for retaining jurisdiction over a state law negligence claim against Okai, the claim is dismissed without prejudice.  Ramey may bring that claim in state court after exhausting the internal grievance procedures if he so chooses.

### III.    CONCLUSION

Ramey claims his treatment from the defendants following his complaints of back pain violated the Constitution.  The court finds that there are no genuine issues of material fact as to whether the defendants were deliberately indifferent to his medical needs, and therefore the court will grant the defendants' motion for summary judgment by separate order.  Ramey's remaining claim arises under state law, and the court will dismiss that claim without prejudice for lack of subject-matter jurisdiction.

BY THE COURT:


/s/ *Edward G. Smith*
EDWARD G. SMITH, J.

16